{¶ 33} I concur with the majority in principle that in the proper case, an arbitrator could incorporate the concept of proportionality of discipline into the term "just cause" if that term exists without further definition as it does in this collective bargaining agreement ("CBA"). A "proper case" might be where the record established that the City had determined two officers with similar service records were guilty of identical misconduct but acted to discipline only one officer. That did not happen here.
 {¶ 34} In this case, the Arbitrator expressly found that just cause existed for the City's termination of the officer/Grievant for misconduct and lying about a job-related case investigation. This finding was madeprior to any discussion of proportionality of discipline.[23] Next, based upon a series of convoluted credibility calls and questionable inferences extending well beyond the scope of the case before him, theArbitrator essentially conducted his own "trial" and determined: (1) that a second police officer, not a party to the case, was guilty of identical misconduct in a related but separate incident and (2) that the City had apparently not taken notice of this fact or taken any steps to discipline the second officer.
 {¶ 35} The Arbitrator, in effect, then proceeded to sanction theCity for failing to take action against the second officer, by ordering reinstatement of the Grievant. As a result, the reputation of the second officer is tarnished and the City is now encumbered with two police officers whose effectiveness on the job and as courtroom witnesses is largely destroyed for having been branded by the Arbitrator as liars worthy of termination by their employer.
 {¶ 36} There are a number of reasons why permitting this kind of latitude in an arbitration award seems inadvisable, if not unlawful. At the outset, the record in this case is not adequate for the Arbitrator to reach a firm conclusion about either the conduct of the second officer or the appropriate response by the City. For example, prior service records and factors unknown to the Arbitrator, (i.e. not in the record) may or may not justify disparate treatment by the City for similar conduct in a given instance. Thus, it could be that one officer might have had numerous prior reprimands over several years while the second officer could have been new to the force and merely following the more experienced officer's lead.
 {¶ 37} Moreover, in this case the Arbitrator determined that the Grievant affirmatively made false statements in his report and gave untruthful testimony. In contrast, the second officer's "misconduct" was largely inferred by the Arbitrator based upon what was not in his police report and the decision of the Arbitrator to weigh the credibility of certain witnesses against the second officer — all of which might warrant a different response from the City. Finally, it is not likely to be clear to the Arbitrator in a case such as this, whether the City has failed to take action against the second officer, or has simply failed to take action yet.
 {¶ 38} However, even assuming arguendo that the Arbitrator had sufficient evidence and discretion to evaluate the conduct of the second officer and the City's response thereto, the decision to reinstate the Grievant as the remedy for finding both officers guilty of misconduct is irrational, arbitrary and inflicts a capricious, if not unlawful, result upon the City, the second officer, and by potential application, all other members of the CBA. As noted earlier, the decision is plainly harmful to the City's interest in maintaining a viable police force capable of testifying effectively in criminal prosecutions and it unfairly tarnishes the professional reputation of the second officer. However, the decision also places in jeopardy the professional reputation of every other member of the CBA who has not been charged by the employer with any misconduct but who can nevertheless be tried, convicted and branded as a "liar" without benefit of due process, by any arbitrator deciding any case under the arbitration clause of the CBA.
 {¶ 39} For these reasons, I respectfully dissent. In these circumstances I believe the arbitration award constitutes an abuse of discretion on its face. I cannot concur with the majority that such a decision has the necessary rational support or is rationally derived from the CBA as required by the Supreme Court of Ohio. See Bd. of Edn. of theFindlay City School District v. Findlay Edn. Assn, supra; Internatl.Assn. of Firefighters, Local 67 v. Columbus, supra; Ohio Office ofCollective Bargaining v. Ohio Civ. Serv. Employees Assn, Local 11,AFSCME, AFL-CIO, supra. Furthermore, I believe a case could be made that the action of the Arbitrator in this case both exceeds his statutory authority and violates public policy — the due process rights of the second officer and other members of the CBA being at least one such consideration.
 {¶ 40} Accordingly, I would sustain the assignments of error, reverse and remand this matter to the trial court with instructions to vacate the award, and based upon the arbitrator's own findings of just cause for termination of the Grievant discussed in footnote one, supra,
enter judgment in favor of the appellant city of Lima.
[23] The Arbitrator concludes at page 51 of his report that "[h]is record notwithstanding, if the Grievant committed the acts which the Bradfords maintain that he did then the City would have just cause to terminate him." The sum of these alleged "acts" was that the Grievant had illegally entered the home and falsified the circumstances in his report. In subsequent discussion, it is clear that the Arbitrator does not accept in toto the Bradford's version of what happened and even accepts the Grievant's credibility on a number of disputed issues with the Bradfords and the City. Nevertheless, the Arbitrator ultimately concludes at page 57 of his report that the Grievant was "not credible", gave "false testimony and statements" and was otherwise "untruthful" about his entry into the house. This was based not upon the Bradfords' original allegations so much as the Arbitrator's independent determination that the Grievant must have lied about Cheryl Bradford giving him permission to enter the house, which in the Arbitrator's opinion, invalidated the purported arrest and pursuit into the home of Harold Bradford for obstructing the claimed "permitted entry" given by Cheryl. Thus, the Arbitrator's conclusion that the City would have just cause to terminate the Grievant if he illegally entered the home and lied about it, stands, albeit based upon a slightly different lie than the Bradfords and the City had originally alleged.
Only after this discussion does the Arbitrator make another independent determination that the second officer also must have lied (by omitting from his report) about chasing Tyler Bradford into the home in a separate incident shortly after the one involving the Grievant. Finding that the City had not disciplined the second officer for what the Arbitrator determined was the same conduct, the Arbitrator then purports to incorporate the principle of equal treatment into the consideration of just cause regarding the Grievant — ultimately deciding that Grievant should be reinstated despite engaging in conduct which would otherwise warrant termination.